**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **Maria Campos-Rios,** | **Case No. 3:26CV00640** |
| **Petitioners,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Todd Blanche, Attorney General Of the United States, et al.,** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Respondents.** | |

On March 18, 2026, Petitioner Maria Campos-Rios ("Petitioner" or "Campos-Rios") filed a Petition under 28 U.S.C. § 2241 for Writ of Habeas Corpus ("Petition"), in which she asserts that she is presently being unlawfully detained by U.S. Immigration and Customs Enforcement ("ICE") without bond pursuant to 8 U.S.C. § 1225(b)(2)(A).  (Doc. No. 1.)  Pursuant to an expedited briefing Order issued by this Court, Respondents Robert Lynch, Acting Director of the Detroit Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary of the U.S. Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General of the United States (hereinafter referred to collectively as "Federal Respondents")[1] filed an "Answer, Return of Writ, and Request to Dismiss Petition for Writ of Habeas Corpus" on April 1, 2026.  (Doc. No. 5.)  Although Petitioner could have done so, she did not file a Response.

---

[1] Petitioner named Kristi Noem as Respondent Secretary of DHS and Pamela Bondi as Respondent Attorney General of the United States.  Pursuant to Fed. R. Civ. P. 25(d), Markwayne Mullin is substituted in place of Ms. Noem as Secretary of DHS and Todd Blanche is substituted in place of Ms. Bondi as the Attorney General.  In addition, the Court notes that Petitioner names Dennis Sullivan, Executive Director of the Corrections Center of Northwest Ohio as a Respondent.  The docket reflects that Petitioner failed to serve Respondent Sullivan with a copy of the Petition and its Exhibits.  Counsel has not entered an appearance for Respondent Sullivan and Respondent Sullivan did not file a response to the Petition.  However, for the reasons set forth *supra*, the Court finds that Respondent Sullivan is not a proper Respondent in this action and he is dismissed with prejudice on that basis.

For the following reasons, Respondents Blanche, Mullin, and Sullivan are dismissed.  In light of the Sixth Circuit's recent decision in *Lopez-Campos v. Raycraft*, -- F.4th ----, 2026 WL 1283891 (6th Cir. May 11, 2026), the Petition is granted as set forth herein.

I.      **Background[2]**

A.      **Factual Allegations**

Campos-Rios is a native and citizen of Honduras.  (Doc. No. 1 at PageID#s 2, 4.)  She entered the United States without inspection in July 2004, at an unknown date and time and at an unknown location.  (Doc. No. 1 at PageID#4; Doc. No. 5-1 at PageID# 59.)  Campos-Rios has two minor children, who were born in the United States in June 2008 and December 2016, respectively, and reside with their father in Columbus, Ohio.  (*Id*.)  Prior to the events described below, Campos-Rios had not previously encountered immigration authorities in this country and had no pending immigration-related applications.  (Doc. No. 5-1 at PageID# 59.)

On January 29, 2026,[3] ICE officers initiated a stop of the vehicle that Campos-Rios was driving in a shopping area in Columbus, Ohio.  (Doc. No. 1 at PageID# 4; Doc. No. 5-1 at PageID# 58.)  According to the "Encounter Summary" subsequently completed by ICE, the officers activated their emergency lights and Campos-Rios "took off without stopping and quickly crashed into another

---

[2] In setting forth the factual background, the Court relies on the factual allegations in the Petition, as well as the documents attached to the Return.  (Doc. Nos. 1, 5-1 through 5-5.)  The Court notes that Campos-Rios provides only skeletal allegations in her Petition regarding her entry into the United States and her subsequent administrative immigration proceedings.  (Doc. No. 1 at PageID#s 4-5.)  Moreover, Campos-Rios did not provide copies of any of the documentation and filings relating to her immigration proceedings. In the Return, the Federal Respondents provide some additional information regarding Campos-Rios's immigration proceedings and some (but not all) of the documents and filings relating to those proceedings.

[3] Campos-Rios alleges in her Petition that she was arrested and detained by ICE in December 2025.  (Doc. No. 1 at PageID# 4.)  However, the Form I-213 attached to the Return clearly indicates that Campos-Rios was arrested and detained by ICE on January 29, 2026.  (Doc. No. 5-1 at PageID# 58.)

2

car." (Doc. No. 5-1 at PageID# 58.)  The officers approached the vehicle and identified themselves as immigration officials. (*Id*.)  Campos-Rios provided the officers with her Honduran passport. (*Id*.) After the officers "ran her name" and spoke with her, they determined that Campos-Rios had entered the country without permission or inspection and took her into custody. (*Id*.)

On that same date, DHS issued a Form I-862 Notice to Appear which charged Campos-Rios with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i),[4] i.e., as an alien present in the United States without being admitted or paroled. (Doc. No. 5-2 at PageID# 61-62.)  Campos-Rios was placed in removal proceedings and ordered to appear before an Immigration Judge ("IJ") in Cleveland, Ohio on March 9, 2026. (*Id*.)  According to the Federal Respondents, Campos-Rios thereafter "admitted the facts in the [Notice to Appear] and conceded her removability." (Doc. No. 5 at PageID# 40.)  At some point, she filed an EOIR-42(B) Application for Cancellation of Removal.[5]  (Doc. No. 1 at PageID#2; Doc. No. 5 at PageID# 40.)

On February 27, 2026, Campos-Rios filed a request for bond. (Doc. No. 1 at PageID# 4; Doc. No. 5-4.)  The Immigration Judge ("IJ") conducted a bond hearing on Campos-Rios's request on March 4, 2026. (*Id*.)  According to Campos-Rios, the IJ determined that she was neither a flight risk nor a danger to community but nonetheless denied bond on the basis of lack of jurisdiction. (Doc. No. 1 at PageID# 5; Doc. No. 5-5.)  Campos-Rios reserved her right to appeal. (Doc. No. 5-5 at PageID#73.)  However, as of the date of the filing of the Return, the Federal Respondents assert (and

---

[4] Section 1182(a)(6)(A)(i) provides that:  "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

[5] Neither Campos-Rios nor the Federal Respondents provide this Court with a copy of her Application for Cancellation of Removal.  Nor do they provide this Court with a copy of the docket of her immigration proceedings.

3

Campo-Rios does not contest) that she had not appealed the IJ's denial of bond.  (Doc. No. 5 at PageID# 40.)

Meanwhile, on May 1, 2026, the IJ held a hearing on Campos-Rios's Application for Cancellation of Removal.  (Doc. No. 5 at PageID# 40.)  According to the EOIR Automated Case Information website, the IJ denied the Application and ordered Campos-Rios removed. *See* https://acis.eoir.justice.gov/en/caseInformation.  Any appeal from the IJ's removal decision is due by June 1, 2026.  (*Id.*)

### B.     Procedural History

On March 18, 2026, Campos-Rios filed a habeas petition with this Court pursuant to 28 U.S.C. § 2241.  (Doc. No. 1.)  Therein, Campos-Rios asserts that she is being unlawfully held without bond because the IJ has improperly determined that she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), rather than to discretionary bond determinations under 8 U.S.C. § 1226(a).[6]  (*Id.* at PageID#s 6, 7.)  Campos-Rios further alleges that her continued detention without an individualized bond hearing violates her Fifth Amendment due process rights.  (*Id.* at PageID# 6.)  Finally, Campos-Rios alleges that her vehicle "was stopped and searched without reasonable articulable suspicion" and that her stop and subsequent arrest violated her Fourth Amendment rights against unreasonable searches and seizures.  (*Id.* at PageID# 7.)

---

[6] Campos-Rios also alleges, generally, as follows: "Since the *Matter of Yajure Hurtado* decision, a class action lawsuit, *Lozaro Maldonado Bautista et al. v. Ernesto Santacruz Jr et al*, Case 5:25-cv-01873-SSS-BFM (U.S. Dist. Central California 2026) has been filed.  Petitioner is a member of this class, and Respondents are parties to this action.  Pursuant to this litigation, the *Matter of Yajure Hurtado* decision was rescinded. This rescission is presently subjected to an administrative stay pursuant to a March 6, 2026 order from the Ninth Circuit Court of Appeals, however, the analysis in *Lozaro Maldonado Bautista et al. v. Ernesto Santacruz Jr et al* is compelling, and the rescission was still in effect on March 5, 2026, when the Immigration Judge issued his decision." (*Id.* at PageID# 6.)

4

Based on the above, Campos-Rios asserts claims for (1) Violation of Fifth Amendment Right to Due Process (Refusal to Consider Petitioner's Immigration Bond Request on the Merits) (Count One); (2) Violation of 8 U.S.C. § 1226(a)(2) (Count Two); and (3) Violation of Fourth Amendment Right against Unreasonable Searches and Seizures (Count Three). (*Id.* at PageID#s 6-7.) In her Prayer for Relief, Campos-Rios requests that this Court: (1) assume jurisdiction over this matter; (2) declare that her detention violates the Due Process Clause of the Fifth Amendment, and 8 U.S.C. § 1226(a)(2); (3) issue a Writ of Habeas Corpus ordering Respondents to release her immediately; (4) issue an Order prohibiting the Respondents from transferring her from the district without the court's approval; and (5) award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under law. (*Id*. at PageID#s 7-8.)

On March 19, 2026, the Court directed the Clerk to forward a copy of the Petition to the Office of the United States Attorney, Northern District of Ohio. *See* Non-Doc. Order dated March 19, 2026. In addition, pursuant to 28 U.S.C. § 2243 and for good cause shown, the Court ordered (1) Respondents to respond to the Petition by no later than April 1, 2026; and (2) Petitioner to file a Reply by no later than April 15, 2026. (*Id*.)

On April 1, 2026, the Federal Respondents filed a combined "Answer, Return of Writ and Request to Dismiss Petition for Writ of Habeas Corpus" (hereinafter "Return"). (Doc. No. 5.) Campos-Rios failed to file a Response.

II.     **Statutory Framework regarding Detention and Bond**

    A.     **Relevant Statutes**

5

Two statutes principally govern the detention of aliens pending removal proceedings: 8 U.S.C. § 1225 and § 1226. Section 1225(b)(2)(a)(i) provides for mandatory detention pending removal, as follows:

(2) INSPECTION OF OTHER ALIENS

(A) In general

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225 applies to "applicants for admission," who are defined as aliens "present in the United States who [have] not been admitted or who arrive[] in the United States." 8 U.S.C. § 1225(a)(1). The statute provides that "applicants for admission" must undergo screening by an examining immigration officer, and if it is determined that "an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," he or she "shall be detained for" removal proceedings under Section 1229a. 8 U.S.C. § 1225(b)(2)(A). The only exception to this mandatory detention provision is for aliens who are released "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

Section 1226, by contrast, sets forth a discretionary detention framework. Specifically, Section 1226(a) provides, in relevant part:

(a) ARREST, DETENTION, AND RELEASE

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

6

(2) may release the alien on—

    (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General ...

8 U.S.C. § 1226(a).  Subsection (c) of Section 1226 prohibits certain aliens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted from being released on bond, but only if the alien has also been "charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."  8 U.S.C. § 1226(c)(1)(E).  Relevant here, aliens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. a bond hearing) before an IJ.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ evaluates whether there is a risk of nonappearance or danger to the community.

For many years, the Government applied the discretionary detention framework set forth in § 1226(a) to aliens (such as Petitioner herein) who entered the United States without inspection and were subsequently placed in regular removal proceedings.  *See, e.g., Maldonado v. Olson*, 795 F.Supp.3d 1134, 1150 (D. Minn. Aug. 15, 2025) ("Historically, noncitizens who resided in the United States, but who had previously entered without inspection, were not deemed 'arriving aliens' under § 1225(b), but were instead subject to § 1226(a).")  *See also Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2025 WL 2674169 (BIA 2025) ("We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection.")

**B.**    **DHS Change in Policy and Relevant BIA Decisions**

On May 15, 2025, however, the BIA decided *Matter of Q. Li*, 29 I&N 66, 2025 WL 1442892 (BIA May 15, 2025).  In that decision, the BIA changed course, finding that "an applicant for

7

admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under [§ 1225(b)], and is ineligible for any subsequent release on bond under [§ 1226(a)]." *Matter of Q. Li*, 29 I&N at 69.

Several months later, on July 8, 2025, the Government announced a new policy in an internal memorandum entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission." Pursuant to this policy memo, the Government stated that it now deemed all persons who entered the United States without inspection "applicants for admission" under § 1225(a) and, therefore, subject to mandatory detention under § 1225(b)(2)(A).[7] *See Maldonado*, 2025 WL 2374411 at * 11. *See also Martinez v. Hyde*, 792 F.Supp.3d 211, 217-218 (D. Mass. 2025) (noting that "mandatory detention for all applicants has ... been the official policy of the [DHS] .... since July 8, 2025, when Acting Director of [ICE], Todd M. Lyons, issued an internal memorandum explaining that the agency had 'revisited its legal position'").

On September 5, 2025, the BIA issued a precedential decision[8] in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 2025 WL 2674169 (BIA 2025). Therein, the BIA considered the following question: "Does the INA require that all applicants for admission, even those like the respondent who

---

[7] To this Court's knowledge, the "Interim Guidance Regarding Detention Authority for Applicants for Admission" policy memorandum is not available on a Government website. However, a district court recently explained that this internal policy memo was "leaked by legal advocacy groups" and quoted it as providing as follows: "DHS, in coordination with the Department of Justice (DOJ), has revisited its legal position on detention and release authorities. DHS has determined that [section 1225] of the Immigration and Nationality Act (INA), rather than [section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F.Supp.3d 211, 217-218 and fn 10 (D. Mass. 2025). *See also E.V., et al. v. Raycraft, et al.*, 2025 WL 3122837 at * 9 (N.D. Ohio Nov. 7, 2025).

[8] The BIA may designate a decision as precedential. BIA precedential decisions "serve as precedents in all proceedings involving the same issue or issues." 8 C.F.R. § 1003.1(g)(2). *See Gimenez Gonzalez v. Raycraft*, 2025 WL 3006185 at fn 3 (E.D. Mich. Oct. 27, 2025); *Chavez v. Noem*, 801 F.Supp.3d 1133, 1139 (S.D. Cal. Sept. 24, 2025).

have entered without admission or inspection and have been residing in the United States for years without lawful status, be subject to mandatory detention for the duration of their immigration proceedings, and thus the Immigration Judge lacks authority over a bond request filed by an alien in this category?" *Id*. at 220. After considering the statutory language and legislative history of §§ 1225 and 1226, the BIA answered this question in the affirmative, concluding that IJs lack authority to grant bond to aliens who are present in the United States without admission, even with respect to aliens who have been residing in the United States for a lengthy period of time following entry without inspection. *Id*. at 225, 228.

      C.      **Federal Circuit Court of Appeals Decisions**

Circuit Courts of Appeals have reached conflicting decisions regarding whether the Government's interpretation of § 1225(b)(2)(A) is lawful. The Fifth and Eighth Circuits recently ruled in favor of the Government, rejecting the argument that the term "seeking admission" refers only to those aliens who are actively pursuing lawful entry and submitting themselves to inspection by an immigration officer. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 501- 508 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1134- 1137 (8th Cir. 2026). The Second and Eleventh Circuits have disagreed, finding for the petitioners and holding that § 1225(b)(2)(A) does not authorize the mandatory detention of noncitizens unlawfully residing in the United States. *See Cunha v. Freden*, --- F.4th -----, 2026 WL 1146044 (2nd Cir. April 28, 2026); *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, --- F. 4th ----, 2026 WL 1243395 (11th Cir. May 6, 2026). The Seventh Circuit recently issued a divided opinion, which deadlocked on this particular issue. *See Castanon-Nava, et al. v. U.S. Department of Homeland Security, et al.*, -- F.4th ----, 2026 WL 1223250 (7th Cir. May 5, 2026).

Notably, on May 11, 2026 (after the filing of the instant Petition), the Sixth Circuit issued a decision in which it which it "join[ed] the Second and Eleventh Circuits ... in holding that § 1225(b)(2)(A) does not apply to citizens like Petitioners." *Lopez-Campos v. Raycraft*, --- F.4th ---, 2026 WL 1283891 at * 3 (6th Cir. May 11, 2026).  In that case, a panel of the Sixth Circuit considered a consolidated appeal of the decisions of four Michigan district courts granting habeas relief under § 2241.  As the Sixth Circuit explained, the petitioners in these cases "are citizens of Mexico, El Salvador, Venezuela, Nicaragua, and Guatemala who have resided in the United States without lawful status for years" and "without much incident outside of some minor traffic offenses."  *Id*. at * 1. Petitioners "were arrested by [ICE], charged with entering the United States without inspection, and, pursuant to 8 U.S.C. § 1225(b)(2)(A)'s mandatory detention statutory scheme and the [BIA's] decision *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), detained without a determination of their flight risk and dangerousness."  *Id*.

The petitioners filed their respective habeas petitions in the Eastern and Western Districts of Michigan, arguing that they were unlawfully detained under § 1225(b)(2)(A) and should have instead been detained under § 1226 and provided a bond hearing.  *Id*.  In addition, the petitioners claimed that the Government's failure to provide a bond hearing to determine whether they posed a flight risk or danger to others, under any detention statute, violated their due process rights.  *Id*.  The district courts granted the petitions, agreeing with the petitioners that § 1226(a) governed their detention and thus the petitioners should have been afforded a bond hearing before an IJ under that statute.[9]  With

---

[9] *See Lopez-Campos v. Raycraft*, 797 F. Supp.3d 771, 786 (E.D. Mich. 2025); *Sanchez Alvarez v. Noem*, 807 F. Supp.3d 777, 787–88 (W.D. Mich. 2025); *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796 at *8 (E.D. Mich. Oct. 17, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 at *7 (E.D. Mich. Sept. 9, 2025).

one exception, the district courts also determined the Government's failure to provide a bond hearing violated  the petitioners' Fifth Amendment due process rights.[10]  The Government appealed.

In a 2-1 decision, a panel of the Sixth Circuit affirmed.  The court first examined the text of § 1225(b)(2)(A) and found that "for a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer."  *Id*. at * 4.  The court concluded that "[n]oncitizens like Petitioners, who did not attempt lawful entry into the United States and are actively avoiding being inspected for lawful entry, are not 'seeking admission' and are thus not subject to § 1225(b)(2)(A)'s mandatory detention scheme."  *Id.*  "And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226."  *Id*. at * 11 (quoting *Jennings v. Rodriguez*, 583 U.S. 281 303 (2018)).  Thus, the Sixth Circuit held that the district courts did not err when they held that the petitioners' detentions under § 1225(b)(2)(A) were unlawful and that petitioners should have been provided individualized bond hearings under § 1226(a).  *Id.*

The Sixth Circuit next considered the petitioners' claims under the Fifth Amendment Due Process Clause.  *Id*. at * 11-13.  The Court explained as follows:

> Noncitizens who have "passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 [] (1953); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01, [] (1903).  Thus, noncitizens within the interior of the United States are entitled to the protections of the Due Process Clause, "whether their presence here is lawful, unlawful, temporary,

---

[10] Because the district court in *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025) granted relief to Petitioner Reyes based on its statutory interpretation of §§ 1225(b)(2)(A) and 1226, it declined to decide the merits of Reyes's Fifth Amendment due process claim.  *Pizarro Reyes*, 2025 WL 2609425 at *8.

11

or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693, [] (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306, [] (1993); *see also Demore v. Kim*, 538 U.S. 510, 523, [] (2003). Consequently, the government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here." *Yamataya*, 189 U.S. at 100–01 [].

To be sure, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore,* 538 U.S. at 531 []. But the government's ability to detain noncitizens is not limitless. It should effectuate two regulatory goals: (1) ensuring the appearance of noncitizens at future immigration proceedings and (2) preventing danger to the community. *See Zadvydas*, 533 U.S. at 690 []. After all, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Id.; Hamdi v. Rumsfeld*, 542 U.S. 507, 529 [] (2004). **Where immigration detention becomes needlessly prolonged and appears to no longer effectuate the regulatory goals of civil immigration detention, courts routinely hold that the Due Process Clause requires an individualized bond hearing to justify a noncitizen's continued detention.** [citations omitted].

*Id*. at * 11-12 (emphasis added). The Sixth Circuit then affirmed the district courts' determinations that the Government's detention of petitioners without bond under § 1226(a) was a deprivation of liberty that violated their due process rights. *Id*. at * 13. The court explained: "We find no error in the district courts' conclusions that Petitioners were due individualized bond hearings in light of the significant time they have spent within the interior of the United States. We therefore find no reason to disturb the district courts' due process holdings." [11] *Id*.

---

[11] In *Lopez-Campos*, the petitioner had resided in the United States since 1999. *Lopez-Campos*, 797 F. Supp.3d at 775. He was arrested and detained on June 25, 2025, and the district court issued its decision granting habeas relief on August 29, 2025. *Id*. In *Sanchez Alvarez*, the petitioner had resided in the United States since 2004. *Sanchez Alvarez*, 807 F. Supp.3d at 782. He was arrested and detained on August 26, 2025, and the district court issued its decision granting habeas relief on October 17, 2025. *Id*. The district court's decision in *Contreras-Cervantes* involved seven petitioners. Petitioner Contreras-Cervantes had resided in the United States since 2006 and was arrested and detained on August 5, 2025. *Contreras-Cervantes*, 2025 WL 2952796 at *1. Petitioner Angeles-Flores had resided in the United States since at least 2010 and was arrested and detained on June 27, 2025. *Id*. Petitioner Ocando-Leon had resided in the United States since at least 2021 and was arrested and detained on July 15, 2025. *Id*. at * 2. Petitioner Jarquin-Jarquin had resided in the United States since at least 2022 and was arrested and detained on August 6, 2025. *Id*. Petitioner Vasquez-Cruz had resided in the United States since at least 2016 and was arrested and detained on Augsut 1, 2025. *Id*. Petitioner

### III.     Analysis

In Count One of the Petition, Campos-Rios asserts a violation of her Fifth Amendment Right to Due Process based on Respondents' refusal to consider her immigration bond request "on the merits." (Doc. No. 1 at PageID# 6.)  In Count Two, she asserts a violation of § 1226(a)(2), alleging that the plain language of that statute "affords her a right to have her immigration bond heard on the merits." (*Id*. at PageID# 7.)  Lastly, in Count Three, Campos-Rios asserts a violation of her Fourth Amendment rights.  (*Id*.)  Specifically, she alleges that: "Petitioner's vehicle was stopped and searched without reasonable articulable suspicion when she left a grocery store.  Her stop without probable cause and subsequent arrest violated h[er] 4th Amendment Rights against Unreasonable Searches and Seizures." (*Id*.)

In the Return, the Federal Respondents first request that the Court dismiss all Respondents except Respondent Lynch (the Director of ICE's Detroit Field Office) because Lynch has custody over Campos-Rios for purposes of the instant Petition and is, therefore, the only proper Respondent. (Doc. No. 5 at PageID# 39, fn 1).  The Federal Respondents next argue that the Petition should be dismissed in its entirety because Campos-Rios failed to exhaust her administrative remedies.  (*Id*. at PageID#s 40-42.)  The Federal Respondents then assert that the Petition should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) because 8 U.S.C. §§ 1252(g) and 1252(b)(9) bar review of Campos-Rios's claims.  (*Id*. at PageID#s 42-45.)  Lastly, the Federal Respondents argue that Campos-Rios is properly detained under § 1225(b)(2) and, further, that her "statutorily authorized

---

Godoy-Perez had resided in the United States since at least 2018 and was arrested and detained on July 31, 2025.  *Id*. Petitioner Diaz-Alcantar had resided in the United States since at least 2003 and was arrested and detained on July 30, 2025.  *Id*. And Petitioner Reyes-Sanchez had resided in the United States since at least 2000 and was arrested and detained on September 5, 2025.  The district court issued its decision in *Contreras-Cervantes, supra* on October 17, 2025.

detention does not violate due process." (*Id.* at PageID#s 45-56.)  The Federal Respondents fail to acknowledge or address Campos-Rios' Fourth Amendment claim at any point in the Return.

Campos-Rios did not file a response to the Federal Respondents' Return.  In her Petition, however, Campos-Rios asserts generally that she is being unlawfully detained under § 1225(b)(2) and that her prolonged detention violates her due process rights.  (Doc. No. 1.)   The Court will address the parties' arguments, in turn, below.

### A.  Proper Respondent

The Federal Respondents first argue that "[a] writ of habeas corpus may only be issued by the person having custody of the detainee."  (Doc. No. 5 at PageID# 39, fn 1.)  Citing *Roman v. Ashcroft*, 340 F.3d 314 (6th Cir. 2003), the Federal Respondents maintain that "in the ICE context, that person is the Field Office Director for ICE."  (*Id.*)   The Federal Respondents therefore maintain that Respondents Blanche, Mullin, and Sullivan are not proper respondents and should be dismissed.  (*Id.*)  Campos-Rios fails to acknowledge, address, or otherwise respond to this argument.[12]

Pursuant to 28 U.S.C. § 2243, a writ of habeas corpus may be issued by "the person having custody of the person detained."  In the context of a habeas corpus petition filed by an alien detained in a local detention facility contracted by ICE, the Sixth Circuit has held that "although the warden of each detention facility technically has day-to-day control over alien detainees, the [ICE District] Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners."  *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003).  Therefore, the Sixth Circuit explained, "a detained alien generally must designate his immediate custodian – the INS District

---

[12] In the Petition, Campos-Rios does not directly address this issue and states only that Respondents Blanche, Mullin, and Sullivan are each "a legal custodian of Petitioner."  (Doc. No. 1 at PageID#s 3-4.)

Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Roman,* 340 F.3d at 320. *See also Woldeghergish v. Lynch*, 2025 WL 2469584 at * 1 (S.D. Ohio Aug. 5, 2025), *adopted by* 2025 WL 2468042 (S.D. Ohio Aug. 27, 2025); *Hango v. McAleenan*, 2019 WL 7944352 at *2-3 (N.D. Ohio Nov. 13, 2019), *adopted by* 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019); *Orozco-Valenzuela v. Holder*, 2015 WL 1530631 at * 4 (N.D. Ohio April 6, 2015).

In light of the above, and in the absence of any meaningful opposition from Campos-Rios, the Court grants the Federal Respondents' request that Respondents Blanche, Mullin, and Sullivan be dismissed.[13]  The only remaining Respondent, then, is Respondent Lynch.

### B.      Jurisdiction

The Federal Respondents argue that the Petition should be dismissed under Fed. R. Civ. P. 12(b)(1)[14] because the Court lacks jurisdiction over Campos-Rios's claims under 8 U.S.C. §§ 1252(g) and 1252(b)(9).  (Doc. No. 5 at PageID#s 42-45.)  Campos-Rios failed to respond to the Federal Respondents' Return and, therefore, has not acknowledged or addressed the Federal Respondents' jurisdictional arguments.

---

[13] In *Roman,* the Sixth Circuit further explained that the Attorney General may also be named as a respondent to an alien's habeas corpus petition "under extraordinary circumstances where it is necessary to preserve a person's access to habeas corpus relief."  *Roman,* 340 F.3d at 325.  Here, Campos-Rios does not argue that there are any "extraordinary circumstances" that would warrant naming Attorney General Blanche as a Respondent herein.  Thus, the Court does not reach this issue.

[14] A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject-matter jurisdiction of the court. *See* Fed. R. Civ. P. 12(b)(1).  The standard of review of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *See Cartwright v. Garner*, 751 F.3d 752, 759-760 (6th Cir. 2014).  Here, the Federal Respondents do not indicate whether they are making a facial or factual challenge.  However, based on the Federal Respondents' briefing and in the absence of any argument to the contrary, the Court construes the Federal Respondents' Motion to Dismiss as raising a facial challenge.  A facial challenge "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the [Petition] as true." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007).  To survive a facial attack, the Petition must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387  (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME, Local 11*, 397 F. Supp. 3d 1076, 1081-82 (S.D. Ohio 2019).

The Court further notes that the Sixth Circuit does not explicitly address the issue of jurisdiction in its recent decision in *Lopez-Campos, supra.*[15]  The fact that the Sixth Circuit proceeded to address the merits of the parties' statutory and constitutional arguments suggests that it believed it possessed subject matter jurisdiction over the petitioners' claims.  However, as subject matter jurisdiction is not explicitly addressed in *Lopez-Campos*, and out of an abundance of caution, the Court will address the Federal Respondents' arguments regarding §§ 1252(g) and 1252(b)(9) separately, below.

### 1.      8 U.S.C. § 1252(g)

The Federal Respondents first argue (summarily) that § 1252(g) bars this Court's review of Campos-Rios's claims.  (Doc. No. 5 at PageID#s 42-43.)  Citing non-binding authority from outside this Circuit, the Federal Respondents assert that this Court lacks jurisdiction pursuant to § 1252(g) because "the Secretary's decision to commence removal proceedings includes the decision to detain an alien pending such removal proceedings."  (*Id.*)

Section 1252 generally is "Congress's comprehensive scheme for judicial review of removal orders."  *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1256–57 (11th Cir. 2020).  Of relevance here, § 1252(g) limits the jurisdiction of federal courts as follows:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

---

[15] The issue of subject matter jurisdiction does not appear to have been raised in any of the four district court cases that were consolidated for appeal.  *See Lopez-Campos v. Raycraft*, 797 F. Supp.3d 771, 786 (E.D. Mich. 2025); *Sanchez Alvarez v. Noem*, 807 F. Supp.3d 777, 787–88 (W.D. Mich. 2025); *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796 at *8 (E.D. Mich. Oct. 17, 2025); *Pizarro Reyes v. Raycraft*, 2025 WL 2609425 at *7 (E.D. Mich. Sept. 9, 2025).

8 U.S.C. § 1252(g).  The Supreme Court has declined to interpret this statute expansively, rejecting as "implausible" the notion that Congress intended § 1252(g) to cover "all claims arising from deportation proceedings."  *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). *See also Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 19 (2020) (same).  Rather, the Supreme Court "narrow[ly] read[s]" § 1252(g) to only cover the "three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno*, 525 U.S. at 482, 487 (emphasis in original).  *See also Regents of Univ. of Cal.*, 591 U.S. at 19.

Here, Campos-Rios does not challenge the government's decision to commence removal proceedings, adjudicate her case, or execute a removal order.  Instead, Campos-Rios challenges only the lawfulness of her continued detention without a bond hearing.  As district courts in this Circuit have held, "[w]hile an immigrant's detention is technically related to the attorney general's decision to commence proceedings, that technical relation is insufficient to trigger § 1252(g)."  *Lemus v. Lynch*, 2026 WL 496731 at * 5 (N.D. Ohio Feb. 23, 2026) (Lioi, J.)  *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) ("[In *Reno*,] [w]e did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions[.]") (citing *Reno*, 525 U.S. at 482–83)); *Alonso v. Tindall*, 2025 WL 3083920 at *2 (W.D. Ky. Nov. 4, 2025) (Hale, J.) ("A claim of unlawful detention does not arise from the commencement of removal proceedings 'within the meaning of § 1252(g) simply because the claim[] relate[s] to that discretionary, prosecutorial decision.'") (quoting *Ozturk v. Hyde*, 136 F.4th 382, 397 (2nd Cir. 2025)).

Indeed, the Sixth Circuit has drawn a jurisdictional distinction where (as here) a petitioner brings a claim challenging her detention as opposed to her removal.  *See Hamama v. Adducci*, 912

17

F.3d 869, 877 (6th Cir. 2018). Notably, the Sixth Circuit has found that, in such cases, "the district court's jurisdiction over the detention-based claims is independent of its jurisdiction over the removal-based claims." *Id.* *See also Bartolon v. Bondi*, 813 F.Supp.3d 811, 821 (S.D. Ohio 2025). Accordingly, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of her order of removal," Sixth Circuit precedent indicates that jurisdiction is not precluded by § 1252(g). *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010). Thus, most courts in the Sixth Circuit that have addressed this issue agree that challenges to the government's failure to provide a detained alien with a bond hearing do not fall within the narrow scope of § 1252(g). *See e.g., Bartolon,* 813 F.Supp.3d at 821; *Lemus,* 2026 WL 496731 at * 5; *Lopez v. Noem*, 2026 WL 395202 at * 2-3 (N.D. Ohio Feb. 21, 2026) (Gaughan, J.); *Kaur v. Raycraft*, 2026 WL 709728 at * 4 (N.D. Ohio March 13, 2026) (Boyko, J.); *E.V. v. Raycraft,* 2025 WL 3122837 at * 5 (N.D. Ohio Nov. 7, 2025) (Pearson, J.); *Coronado v. Sec'y, Dep't of Homeland Security*, 2025 WL 3628229 at * 3-4 (S.D. Ohio Dec. 15, 2025) (Cole, J.); *Alonso*, 2025 WL 3083920 at *2.

Likewise, here, the Court finds that Campos-Rios's claims do not fall within the three specific categories enumerated in § 1252(g) or otherwise require the Court to address the merits of her removal proceedings. Thus, the Court finds that § 1252(g) does not bar review of Campos-Rios's detention-based claims.

### 2. 8 U.S.C. § 1252(b)(9)

The Federal Respondents next argue that § 1252(b)(9) bars review of Campos-Rios's claims. (Doc. No. 5 at PageID#s 43-45.) They assert that § 1252(b)(9) "'channels judicial review of all [claims arising from deportation proceedings]' to a court of appeals in the first instance." (*Id.*) The Federal Respondents further note that 8 U.S.C. § 1252(a)(5) provides that such a petition is the

exclusive means for judicial review of immigration proceedings.  (*Id*.)  The Federal Respondents maintain that "'[t]aken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue—legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process.'" (*Id*.) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)).  The Federal Respondents argue that these statutes bar district court review of the instant Petition because Campos-Rios "challenges the decision and action to detain her, which arises from ICE's decision to commence removal proceedings." (*Id*.)  Thus, the Federal Respondents assert, Campos-Rios "must present her claims before the appropriate court of appeals because she challenges the government's decision to detain her." (*Id*.)

The Court rejects this argument.  As noted above, Section 1252 governs "[j]udicial review of a final order of removal[.]"  *Lopez*, 2026 WL 395202 at * 3.  While § 1252(a)(2)(D) explicitly preserves the ability to petition for a writ of habeas corpus to raise a constitutional issue, § 1252(a)(5) makes the court of appeals "the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter[.]"  8 U.S.C. § 1252(a)(5).  *See also Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) ("The REAL ID Act clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals.").  To that end, § 1252(b)(9) provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

As it did with § 1252(g), the Supreme Court has rejected an expansive view of the language of § 1252(b)(9). Specifically, in *Jennings, supra*, a plurality of Supreme Court justices recognized that, while issues of detention and entitlement to bond hearings arguably "arise from" removal proceedings, such an expansive view of § 1252(b)(9) would have "staggering results." *Jennings*, 583 U.S. at 293. The plurality explained:

> Suppose, for example, that a detained alien wishes to assert a claim under *Bivens* [ ], based on allegedly inhumane conditions of confinement. [ ] Or suppose that a detained alien brings a state-law claim for assault against a guard or fellow detainee. Or suppose that an alien is injured when a truck hits the bus transporting aliens to a detention facility, and the alien sues the driver or owner of the truck. The "questions of law and fact" in all those cases could be said to "aris[e] from" actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd.

*Id*. (internal citations omitted). Rejecting such an expansive reading, the plurality instead held that § 1252(b)(9) presents no jurisdictional bar where a claimant does not challenge a removal order, the decision to detain or seek removal in the first place, or the process by which removability would be determined. *Id*. at 294–95. A majority of the Supreme Court later adopted *Jennings*'s formulation of § 1252(b)(9), noting that "[a]s we have said before, § 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Regents of the Univ. of California*, 591 U.S. at 19 (citing *Jennings,* 583 U.S. at 294–95 (cleaned up)). *See also Lemus*, 2026 WL 496731 at * 3.

Based on the above, numerous district courts in this Circuit have found that § 1252(b)(9) does not divest district courts of subject matter jurisdiction over an alien's detention-based habeas claims. *See Bartolon*, 813 F.Supp.3d at 822 ("Here, since Petitioner's detention-based claims squarely contest

his detention under 8 U.S.C. § 1225 and whether he is entitled to a bond hearing, § 1252(b)(9) is no bar to this Court's jurisdiction."). *See also Lopez*, 2026 WL 395202 at * 4; *Lemus,* 2026 WL 496731 at * 3-4; *Kaur,* 2026 WL 709728 at * 5-6; *Coronado*, 2025 WL 3628229 at * 4-5; *E.V.*, 2025 WL 3122837 at * 6-7; *Reyes-Martinez v. Woosley*, 2025 WL 3680330 at *3 (W.D. Ky. Dec. 18, 2025) (Jennings, J.); *Delgado v. Noem*, 2025 WL 3251144 at *4 (W.D. Mich. Nov. 21, 2025) (Jonker, J.).

Here, the Court finds that § 1252(b)(9) does not bar jurisdiction. As discussed *supra*, Campos-Rios does not challenge a removal order, the initial decision of the government to detain her or seek removal, or the process by which her removability will be determined. Rather, Campos-Rios's sole challenge is to the government's failure to provide a bond hearing. Such a challenge does not fall within § 1252(b)(9). Accordingly, the Court finds that § 1252(b)(9) does not divest this Court of subject matter jurisdiction to consider Campos-Rios's detention-based claims.

### C. Exhaustion of Administrative Remedies

The Court will next address the Federal Respondents' argument that the Petition should be dismissed without prejudice because Campos-Rios failed to exhaust her administrative remedies. (Doc. No. 5 at PageID#s 40-42.) As noted above, Campos-Rios failed to respond to the Return and, therefore, has not acknowledged or addressed the Federal Respondents' arguments with respect to this issue.

The general rule is that "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Howell v. INS*, 72 F.3d 288, 291 (2nd Cir. 1995) (quoting *Guitard v. United States Sec'y of Navy*, 967 F.2d 737, 740 (2nd Cir. 1992)) (internal quotation marks omitted). *See also Beharry v. Ashcroft*, 329 F.3d 51, 56 (2nd Cir. 2003). "Exhaustion of administrative remedies serves numerous

purposes, including protecting the authority of administrative agencies, limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry,* 329 F.3d at 56.  *See also Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 175-176 (1st Cir. 2016) (noting that exhaustion allows "an agency the first opportunity to apply [its] expertise" and "obviat[es] the need for [judicial] review in cases in which the agency provides appropriate redress.")

The requirement of administrative exhaustion can be either statutorily or judicially imposed as a matter of prudence.  *See Beharry*, 329 F.3d at 56.  *See also Perkovic v. I.N.S.,* 33 F.3d 615, 619 (6th Cir. 1994) (holding that exhaustion requirements not written into the text of a statute are prudential, not jurisdictional); *Brito v. Garland,* 22 F.4th 240, 255 (1st Cir. 2021) ("There are two species of exhaustion: statutory and common-law."); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).  "The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'"  *Brito,* 22 F.4th at 255 (quoting *Anversa*, 835 F.3d at 174).  *See also Puga*, 488 F.3d at 815.  In other words, "exhaustion of administrative remedies is absolutely required if explicitly mandated by Congress," but "courts have more latitude in dealing with exhaustion questions when Congress has remained silent." *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997).

The Court notes that the Sixth Circuit does not address the issue of exhaustion in its recent decision in *Lopez-Campos, supra*.[16]  In the instant case, the parties appear to agree (and the Court

---

[16] Each of the four underlying district court decisions in the *Lopez-Campos* consolidated appeal expressly addresses the issue of exhaustion. Specifically, in each of those cases, the district courts exercised their discretion to waive the administrative exhaustion requirement for various reasons.  *See Lopez-Campos*, 797 F. Supp.3d at 778-789; *Sanchez Alvarez v. Noem*, 807 F. Supp.3d at 783-785; *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796 at * 5-6; *Pizarro Reyes*

22

presumes) that the requirement of administrative exhaustion falls within this Court's discretion. (Doc. No. 5 at PageID#s 40-42.) *See Bartolon*, 813 F.Supp.3d at 823.  The Court notes that the parties fail to direct this Court's attention to any binding authority regarding the appropriate standard for evaluating whether to require exhaustion as a prudential matter.  And this Court is not aware of any binding Sixth Circuit precedent regarding the application of prudential exhaustion in this particular context.[17] *See Bartolon*, 813 F. Supp. at 823.  Several other Circuits, however, have examined prudential exhaustion in similar circumstances and developed tests for evaluating whether to require habeas petitioners to exhaust their administrative remedies.

This Court has applied the Ninth Circuit's test for prudential exhaustion in this context.  *See Mendoza v. Raycraft,* 2025 WL 3157796 at * 8 (N.D. Ohio Nov. 12, 2025) (Barker, J.); *Hernandez Torrealba v. United States Department of Homeland Security, et al.*, 2025 WL 2444114 at * 8-12 (N.D. Ohio Aug. 25, 2025) (Barker, J.)[18]  Under the Ninth Circuit's test, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

---

*v. Raycraft*, 2025 WL 2609425 at * 3-4.  Nonetheless, the Government does not appear to have raised or argued the issue of exhaustion on appeal.

[17] The Sixth Circuit has, however, held that, as a general rule, "[f]ederal prisoners must exhaust their administrative remedies prior to filing a habeas petition under § 2241." *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006).  *See also Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981); *Aron v. LaManna*, 4 Fed. Appx. 232, 233 (6th Cir. 2001).

[18] In recent months, numerous district courts in this Circuit have applied the Ninth Circuit's test for prudential exhaustion in the immigration context, including in the context of challenges to an IJ's denial of bond.  *See, e g.*, *Rodriguez v. Noem*, 812 F.Supp.3d 751, 757 (W.D. Mich. 2025); *Singh v. Stevens*, ---- F.Supp.3d -----, 2026 WL 456489 at * 3-4 (N.D. Ohio 2026); *Bartolon*, 813 F.Supp.3d at 823-824; *Mejia v. Woosley*, 2025 WL 2933852 at * 2 (W.D. Ky. Oct. 15, 2025).

*Puga,* 488 F.3d at 815 (citations omitted) (hereinafter "the *Puga* factors").[19]  *See also Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).  Nonetheless, even if the three *Puga* factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation and quotation marks omitted).  *See also Beharry*, 329 F.3d at 62 (finding that exhaustion of administrative remedies may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question.") (quotation omitted).

Here, the Federal Respondents correctly note that, in several recent decisions, the undersigned has denied without prejudice habeas petitions similar to the instant Petition on the grounds that the petitioners therein had failed to exhaust their administrative remedies.  *See, e.g., Mendoza,* 2025 WL 3157796 at * 8; *Hernandez Torrealba*, 2025 WL 2444114 at * 8-12.  For the following reasons, however, the Court declines to require Campos-Rios to exhaust her administrative remedies herein.

As discussed *supra*, in Counts One and Two of her Petition, Campos-Rios asserts that (1) she is being unlawfully held without bond because the IJ improperly determined that she is subject to mandatory detention under § 1225(b)(2)(A), rather than to discretionary bond determinations under § 1226(a); and (2) her continued detention without an individualized bond hearing violates her Fifth

---

[19] If a petitioner fails to exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

Amendment due process rights.  (Doc. No. 1 at PageID#s 6, 7.)  The Sixth Circuit addressed these same arguments in *Lopez-Campos, supra* and agreed with the petitioners.  Specifically, and as set forth above, the Sixth Circuit held that the government had unlawfully detained petitioners under § 1225(b)(2) and, further, that "[p]etitioners could have been detained pursuant to only § 1226." *Lopez-Campos*, 2026 WL 1283891 at * 3-11.  In addition, the Sixth Circuit affirmed the district courts' determinations that the petitioners' detention without a bond hearing under § 1226(a) "was a deprivation of liberty that violated [their] due process rights."[20]  *Id*. at * 13.

In light of the Sixth Circuit's decision in *Lopez-Campos, supra*, the Court declines to require Campos-Rios to exhaust her administrative remedies.  Specifically, the Court finds that the first and third *Puga* factors (regarding, respectively, the need for agency expertise, and the likelihood that administrative review would allow the agency to correct its mistakes without judicial interference) do not weigh in favor of exhaustion in light of the Sixth Circuit's binding determination that aliens such as Campos-Rios are unlawfully detained under § 1225(b)(2).  Moreover, the record reflects that Campos-Rios has been improperly detained under § 1225(b)(2)(A) since January 29, 2026 – i.e., for 3 months, 16 days as of the date of this Order.  This is comparable to (and in some cases, longer than) the amount of time that the petitioners in the *Lopez-Campos* consolidated appeal were detained before the district courts in those cases granted habeas relief on both statutory and due process grounds.  Under these circumstances, and given the Sixth Circuit's determination that continued detention

---

[20] In each of the underlying district court decisions in the *Lopez-Campos* consolidated appeal, the petitioners had been detained for anywhere between 1 ½ and 3 ½ months at the time of the district courts' decisions.  Specifically, the length of time between the date of the petitioners' arrests and the dates of the district court decisions granting habeas relief, are as follows: (1) Lopez-Campos – 65 days; (2) Sanchez Alvarez—52 days; (3) Contreras-Cervantes—73 days; (4) Angeles-Flores – 112 days; (5) Ocando-Leon – 94 days; (6) Jarquin-Jarquin – 72 days; (7) Godoy-Perez – 106 days; (8) Diaz-Alcantur – 79 days; (9) Vasquez-Cruz – 77 days; (10) Reyes-Sanchez—42 days.  *See Lopez-Campos*, 797 F. Supp.3d at 775; *Sanchez Alvarez*, 807 F. Supp.3d at 782; *Contreras-Cervantes v. Raycraft*, 2025 WL 2952796 at * 1-3.

under similar circumstances is unlawful and violates due process, the Court finds that requiring Campos-Rios to exhaust her administrative remedies by pursuing a potentially time-consuming bond appeal to the BIA would result in irreparable injury.

Accordingly, and for all the reasons set forth above, the Court declines to require Campos-Rios to exhaust her administrative remedies.

### D.     Merits

As noted above, Campos-Rios asserts that she is being unlawfully held without bond because the IJ improperly determined that she is subject to mandatory detention under § 1225(b)(2)(A), rather than to discretionary bond determinations under § 1226(a).  (Doc. No. 1 at PageID# 5-6, 7.)   She maintains that "the plain language of [] 1226(a)(2) affords [her] a right to have her immigration bond heard on the merits."  (*Id*. at PageID# 7.)  In response, the Federal Respondents argue that Campos-Rios is lawfully detained under § 1225(b)(2)(A) and, therefore, not entitled to a bond hearing.

As discussed at length above, the Sixth Circuit explicitly rejected the Federal Respondents' construction of § 1225(b)(2)(A) in *Lopez-Campos, supra*, holding that "[n]oncitizens like Petitioners, who did not attempt lawful entry into the United States and are actively avoiding being inspected for lawful entry, are not 'seeking admission' and are thus not subject to 1225(b)(2)(A)'s mandatory detention scheme."  *Lopez-Campos*, 2026 WL 1283891 at * 4.  Rather, such noncitizens are detained pursuant to § 1226(a) and are, therefore, entitled to an individualized bond hearing under that statute. *Id*. at * 3, 11, 13.  The same reasoning applies here.  Like the petitioners in the *Lopez-Campos* consolidated appeal, Campos-Rios alleges that she has resided in the United States for many years. Specifically, in her Petition, Campos-Rios alleges that she moved to the United States in July of 2004. (Doc. No. 1 at PageID# 4.)  She was arrested and detained by ICE on January 29, 2026 and charged

26

with being an alien present in the United States without being admitted or paroled, or who arrived in the United States at a time or place other than as designated by the Attorney General in violation of § 1182(a)(6)(A)(i).  (Doc. No. 5-1 at PageID# 58; Doc. No. 5-2 at PageID#s 61-62.) Campos-Rios was placed in removal proceedings and subsequently filed an Application for Cancellation of Removal.  (Doc. No. 1 at PageID#2; Doc. No. 5 at PageID# 40.)  On February 27, 2026, Campos-Rios filed a request for bond, which the IJ denied for lack of jurisdiction on March 4, 2026.  (Doc. No. 1 at PageID# 4; Doc. Nos. 5-4, 5-5.)

In light of the Sixth Circuit's binding decision in *Lopez-Campos*, the Court finds that Campos-Rios is unlawfully detained under § 1225(b)(2)(A).  Rather, her detention is governed by § 1226(a). Because the Court has concluded that § 1226(a) is the appropriate statutory framework to apply, the Court will now determine whether Campos-Rios's present detention violates her due process rights. *See Patel v. Field Office Director, et al.*, 2026 WL 1330943 at * 3 (E.D. Ky. May 13, 2026); *Singh v. Lyons, et al*, 2026 WL 1298530 at * 4 (E.D. Ky. May 12, 2026).

The Due Process Clause of the Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  As the Supreme Court has explained, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted).  Therefore, aliens (such as Petitioner herein) are entitled to its protections.  *See Kaur*, 2026 WL 709728 at * 13.  Indeed, "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings."  *Trump v. J.G.G.* 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  Thus, detainees "are entitled to notice and opportunity to be heard appropriate to the nature

of the case." *Reyes Rodriguez v. Greene*, 2026 WL 574961 at * 11 (N.D. Ohio March 2, 2026).  *See also Lopez-Campos*, 2026 WL 1283891 at * 11.

District courts in this Circuit have considered whether a petitioner's prolonged detention without a bond hearing violates his or her due process rights under the three-part balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[21]  Under that test, the Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Id*. at 335.

Here, the Court finds that the *Mathews* analysis weighs in Campos-Rios's favor.  Regarding the first *Mathews* factor, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  In this case, it is undisputed that Campos-Rios has been living in this country since July 2004 and thus has created a cognizable interest in her continued freedom from detention.  *See, e.g., Azalyar v. Raycraft*, 814 F.Supp.3d 926, 933 (S.D. Ohio Jan. 2, 2026); *Hernandez-Cine v. Voorhies*, 2026 WL 972364 at * 6 (N.D. Ohio Apr. 10, 2026); *Lemus*, 2026 WL 496731 at * 14.  *See also Hernandez-Fernandez v. Lyons*, 2025 WL 2976923 at *9 (W.D. Tex. Oct. 21, 2025) ("Because he spent nearly three years at liberty in the United States, Hernandez-Fernandez

---

[21] *See, e.g., Lemus,* 2026 WL 496731 at * 13; *Azalyar,* 814 F.Supp.3d at 933; *Hernandez-Cine*, 2026 WL 972364 at * 6; *Reyes Rodriguez v. Greene*, 2026 WL 574961 at * 12 (N.D. Ohio March 2, 2026); *Soto-Medina v. Lynch*, --- F.3d ----, 2026 WL 161002 at * 7-8 (W.D. Mich 2026).

possesses a cognizable interest in his freedom from detention.")  Accordingly, the Court finds that the first *Mathews* factor weighs in Campos-Rios's favor.

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Azalyar,* 814 F.Supp.3d at 934 (quoting *Hernandez-Fernandez*, 2025 WL 2976923 at *9).  Although Campos-Rios herein did technically appear before an IJ for a bond hearing, the IJ felt bound by agency determinations and guidance purporting to strip jurisdiction.  As a result, the Court finds (for purposes of this factor) that Campos-Rios's bond hearing was not constitutionally adequate because the IJ did not "make an individualized assessment of the [alleged] need to re-detain [her]." *Id.  See, e.g., Reyes Rodriguez*, 2026 WL 574961 at * 12.

As the Supreme Court has explained, civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community.  *Zadvydas,* 533 U.S. at 690.  Without a meaningful individualized pre-detention hearing, there is a significant risk of the erroneous deprivation of the liberty interest of remaining out of custody.  *See, e.g., Hernandez-Cine*, 2026 WL 972364 at * 6 (finding that "an individualized bond hearing ensures that an immigration judge can assess whether a noncitizen poses a flight risk or a danger to the community, thereby mitigating the erroneous deprivation of noncitizen's liberty interests.")  As of the date of this Order, it is undisputed that Campos-Rios has not had an individualized bond hearing, with the assistance of counsel and the ability to present evidence.  Nor have the Federal Respondents argued or demonstrated that Campos-Rios is a flight risk or a danger

to the community. Thus, because of a high risk of erroneous deprivation of Campos-Rios's liberty interest, the Court finds that the second *Mathews* factor weighs in her favor.

The final *Mathews* factor concerns the Unites States' interest, as well as any financial or administrative burdens associated with permissible alternatives. *Mathews*, 424 U.S. at 335. The Court recognizes that the government has a significant legitimate interest in ensuring that aliens appear for removal hearings and do not pose a danger to the community. However, "a 'routine bond hearing' before an IJ presents 'minimal' burdens to the United States." *Reyes Rodriguez*, 2026 WL 574961 at * 12 (quoting *Hyppolite v. Noem*, 808 F.Supp.3d 474, 494 (E.D.N.Y. 2025)). Moreover, the Federal Respondents will also have an opportunity to present their case at any individualized bond redetermination hearing, so there is no risk that requiring such a hearing will impede the government's interests.

Accordingly, and for all the reasons set forth above, the Court finds that all three *Mathews* factors weigh in Campos-Rios's favor. The Court therefore finds that Campos-Rios is entitled to an individualized bond hearing before a neutral IJ. [22] Finally, in light of the Court's conclusion that

---

[22] The Federal Respondents rely on the Supreme Court's decisions in *Demore v. Kim*, 538 U.S. 510 (2003) and *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) for the proposition that "the length of [Petitioner's] detention without bond (currently about three months) is constitutionally permissible." (Doc. No. 5 at PageID#s 54-55.) The Court finds this argument to be without merit. In *Lopez-Campos*, the Sixth Circuit explicitly rejected the Government's reliance on *Demore* and *Thuraissigiam*, finding both cases to be distinguishable. *See Lopez-Campos*, 2026 WL 1283891 at * 12-13 (concluding that "[t]he government stretches the Supreme Court's holdings in *Thuraissigiam* and *Demore* beyond their logical breaking points"). Moreover, this Court notes that, in each of the underlying district court decisions in the *Lopez-Campos* consolidated appeal, the petitioners had been detained for anywhere between 1 ½ and 3 ½ months as of the date of the district courts' decisions. The district courts in *Lopez-Campos*, *Sanchez Alvarez*, and *Contreras-Cervantes* each found that the petitioners' continued detention without bond for that length of time violated their due process rights. The Sixth Circuit affirmed, finding "no reason to disturb the district courts' due process holdings." *Lopez-Campos*, 2026 WL 1283891 at * 13. As noted above, here, Campos-Rios has been detained since January 29, 2026—i.e., 3 months, 16 days as of the date of this Order. Thus, the length of Campos-Rios's detention falls squarely within the timeframe that the Sixth Circuit has upheld as constituting a due process violation.

Campos-Rios is entitled to relief on her statutory and due process claims, the Court need not (and will not) address her Fourth Amendment claim in Count Three.

Having concluded that Campos-Rios's prolonged detention without a bond hearing violates her due process rights, the Court must determine the appropriate remedy.  Campos-Rios requests immediate release from custody.  (Doc. No. 1 at PageID#s 7-8.)  Upon consideration, the Court declines to order Campos-Rios's immediate release and instead orders the Federal Respondents to provide her with a bond hearing within seven (7) days of the date of this Order.[23]  At that hearing, the Federal Respondents shall bear the burden of proof by clear and convincing evidence that Campos-Rios's continued detention is justified or warranted.

## IV.    Conclusion

For all the reasons set forth above, Respondents Blanche, Mullin, and Sullivan are hereby dismissed. The Petition (Doc. No. 1) is GRANTED as follows.  The Court hereby ORDERS the Federal Respondents to hold a hearing no more than seven (7) days from the day of this Order to determine whether to release Petitioner on bond.  At that hearing, the Federal Respondents shall bear the burden of proof by clear and convincing evidence that Petitioner's continued detention is justified or warranted.  The Court further ORDERS the Federal Respondents to file, within fourteen (14) days from the day of this Order, a certificate of compliance certifying that the government has complied with this Order and stating whether Petitioner remains in custody.

---

[23] District courts in this Circuit addressing similar issues agree that a more appropriate remedy is a bond hearing before an immigration judge. *See, e.g., E.V.*, 2025 WL 3122837 at *12 (collecting cases); *Reyes Rodriguez*, 2026 WL 574961 at * 15.

31

**IT IS SO ORDERED.**


Dated:  May 15, 2026                              *s/Pamela A. Barker*
                                                  PAMELA A. BARKER
                                                  UNITED STATES DISTRICT JUDGE